UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SINA MOAYEDI, ) | |
| ) | Civil Case No. 06-1082 (RBW) |
| Plaintiff, ) | |
| v. ) | |
| ) | |
| U.S. CUSTOMS AND BORDER ) | |
| PROTECTION SERVICE, ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant, through its undersigned attorneys, respectfully moves for summary judgment on behalf of the U.S. Customs and Border Protection Service (CBP) on the grounds that there are no material facts in dispute and the CBP is entitled to judgment in its favor as a matter of law. Fed. R. Civ. P. 56. In support of this motion are Defendant's Memorandum of Points and Authorities, Statement of Material Facts Not In Dispute and the attached declaration of Dorothy Pullo, Supervisory Program Analyst, TECS/FOIA Customer Satisfaction Unit, Office of Field Operations, United States Customs and Border Protection.

Therefore, because the defendant has complied with all FOIA requirements, the complaint with regard to this agency should be dismissed.

        Respectfully submitted,

        _____
        JEFFREY A. TAYLOR, D.C. Bar #498610
        United States Attorney

        _____
        RUDOLPH CONTRERAS, D.C. Bar # 434122
        Assistant United States Attorney

        _____
        RHONDA C. FIELDS
        Assistant United States Attorney
        Civil Division
        555 Fourth Street, N.W.
        Washington, D.C. 20530
        202/514/6970

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SINA MOAYEDI, ) | |
| ) | Civil Case No. 06-1082 (RBW) |
| Plaintiff, ) | |
| v. ) | |
| ) | |
| U.S. CUSTOMS AND BORDER ) | |
| PROTECTION SERVICE, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**STATEMENT OF MATERIAL FACTS NOT IN GENUINE DISPUTE**

Defendant submits this statement of material facts as to which there is no genuine dispute in accordance with Local Rule 7.1.

1. On November 20, 2004, Plaintiff, via his counsel, filed an initial FOIA request with the U.S. Customs and Border Protection Service (CBP). Pullo Dec. at ¶ 7 and Exhibit B.

2. On August 1, 2006, the FOIA office responded to Plaintiff's FOIA request by

releasing twenty-four (24) pages of documents, each with redactions pursuant to FOIA. *Id*. at ¶ 11 and Exhibit F.

        Respectfully submitted,

_____
JEFFREY A. TAYLOR, D.C. Bar #498610
United States Attorney


_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney


_____
RHONDA C. FIELDS
Assistant United States Attorney
Civil Division
555 Fourth Street, N.W.
Washington, D.C. 20530
202/514/6970

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SINA MOAYEDI, ) | |
| ) | Civil Case No. 06-1082 (RBW) |
| Plaintiff, ) | |
| v. ) | |
| ) | |
| U.S. CUSTOMS AND BORDER ) | |
| PROTECTION SERVICE, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

This case arises under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and pertains to the processing of plaintiff's FOIA request by the U.S. Customs and Border Protection Service (CBP). The attached declaration of Dorothy Pullo, Supervisory Program Analyst, TECS/FOIA Customer Satisfaction Unit, Office of Field Operations, United States Customs and Border Protection describes the CBP's response to plaintiff's FOIA request.

**Factual and Procedural Background**

On November 20, 2004, Plaintiff, via his counsel, filed an initial FOIA request. Pullo Dec. at ¶ 7 and Exhibit B.

On January 3, 2005, the agency acknowledged receipt of this initial FOIA request. In the January 3, 2005 letter, the local FOIA office stated that there was a backlog of FOIA cases. The FOIA office also requested that the claimant provide a complete and signed Request for Records authorizing plaintiff's counsel to receive the requested records. *Id*. at ¶8 and Exhibit

1

C.

On January 7, 2005, counsel for plaintiff faxed the agency the requested release and authorization.  *Id*. at ¶9 and Exhibit D.

On February 4, 2005, plaintiff mailed a letter to the FOIA office  requesting a status update on the FOIA request.  *Id*. at ¶ 10 and  Exhibit E.

On August 1, 2006, the FOIA office responded to plaintiff's FOIA request by releasing twenty-four (24) pages of documents, each with redactions pursuant to FOIA.  The redactions were made pursuant to Exemptions (b)(2) and (b)(7)(C).  *Id*. at ¶ 11 and Exhibit F.

## STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure mandates summary judgment where "there is no genuine issue as to any material fact and . . .the moving party is entitled to judgment as a matter of law."  *Washington Post Co. v. U.S. Dep't of Health and Human Services*, 865 F.2d 320, 325 (D.C. Cir. 1989).  As the Supreme Court has declared, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

An agency satisfies the summary judgment requirements in a FOIA case by providing the Court and the plaintiff with affidavits or declarations and other evidence which show, if applicable, that the documents are exempt from disclosure.  *Hayden v. National Security Agency Cent. Sec. Serv.*, 608 F.2d 1381, 1384, 1386 (D.C. Cir. 1979), *cert. denied*, 446 U.S. 937 (1980); *Church of Scientology v. U.S. Dept. of Army*, 611 F.2d 738, 742 (9th Cir. 1980).  Summary judgment may be awarded to an agency in a FOIA case solely on the basis of agency affidavits or

declarations if the "affidavits are 'relatively detailed, non-conclusory, and not impugned by evidence ... of bad faith on the part of the agency.'" *Public Citizen, Inc. v. Dept. of State*, 100 F.Supp.2d 10, 16 (D.D.C. 2000)(reversed in part on different issue by 276 F.3d 634 (D.C.Cir.2000) (quoting *McGhee v. Central Intelligence Agency*, 697 F.2d 1095, 1102 (D.C. Cir. 1983).

Specifically, summary judgment is available to a defendant agency upon proof that it has fully discharged its obligations under FOIA. *Miller v. U.S. Dept. of State*, 779 F.2d 1378, 1382 (8th Cir. 1985). The declaration in this matter was provided by an individual familiar with the steps taken by defendant in responding to plaintiff's FOIA request. Since it demonstrates that the defendant met its obligations under the FOIA, and the pleadings and other filings show no genuine issue as to any material fact and CBP is entitled to judgment as a matter of law, summary judgment should be granted to CBP.

## ARGUMENT

**CBP'S Search Was Adequate**.

In responding to a FOIA request, an agency is under a duty to conduct a reasonable search for responsive records. *Oglesby v. U.S. Dept. of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990); *Judicial Watch, Inc. v. U.S. Dept. of Commerce*, 337 F.Supp.2d 146, 158 (D.D.C. 2004); *Allen v. U.S. Secret Service*, 335 F.Supp.2d 95, 97 (D.D.C. 2004); *Cleary, Gottlieb, Steen & Hamilton v. Dept. of Health*, 844 F. Supp. 770, 776 (D.D.C. 1993); *Weisberg v. U.S. Dept. of Justice*, 705 F.2d 1344, 1352 (D.C. Cir. 1983). The adequacy of a search is necessarily "'dependent upon the circumstances of the case.'" *Kronberg v. Department of Justice*, 875 F. Supp. 861, 869 (D.D.C. 1995) (quoting *Truitt v. Department of State*, 897 F.2d 540, 542 (D.C. Cir. 1990)); *see also*

*Judicial Watch, Inc.*, 337 F.Supp.2d at 158.  "[A] search need not be perfect, only adequate, and adequacy is measured by the reasonableness of the effort in light of the specific request."  *Meeropol v. Meese*, 790 F.2d 942, 956 (D.C. Cir. 1986).

Indeed, an agency is not required to search every record system, but need only search those systems in which it believes responsive records are likely to be located.  *Oglesby*, 920 F.2d at 68.  Additionally, the search standards under the FOIA do not place upon the agency a requirement that it prove that all responsive documents have been located.  *Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 892 n.7 (D.C. Cir. 1995).  Even when a requested document indisputably exists or once existed, summary judgment will not be defeated by an unsuccessful search for the document so long as the search was diligent.  *Id.*; *see also Allen*, 335 F.Supp.2d at 99-100 (mere fact that plaintiff discovered one document from a third source that possibly should have been uncovered by the defendant agency "does not render the search process unreasonable.")  Additionally, the mere fact that a document once existed does not mean that it now exists; nor does the fact that an agency created a document necessarily imply that the agency has retained it.  *Maynard v. CIA*, 982 F.2d 546, 564 (1st Cir. 1993).

The burden rests with the agency to establish that it has "made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested."  *Oglesby*, 920 F.2d at 68.  "An agency may prove the reasonableness of its search through affidavits of responsible agency officials so long as the affidavits are relatively detailed, non-conclusory and submitted in good faith."  *Miller*, 779 F.2d at 1383; *Goland v. Central Intelligence Agency*, 607 F.2d 339, 352 (D.C. Cir. 1987), *cert. denied*, 445 U.S. 927 (1980).  Once the agency has proffered such evidence, i.e., a legally-sufficient

4

affidavit, the burden then shifts to the requester to rebut the evidence by a showing of bad faith on the part of the agency. *Miller*, 779 F.2d at 1383. It is insufficient, however, for a requester to attempt to rebut the agency affidavit with purely speculative claims. *See Carney v. U.S. Department of Justice*, 19 F.3d 807, 813 (1st Cir. 1994); *SafeCard Services, Inc. v. S.E.C.*, 926 F.2d 1197, 1200 (D.C. Cir. 1991).

The Pullo declaration demonstrates through detailed, non-conclusory averments that the defendant engaged in a "good faith effort to conduct a search for the requested records, using methods which [were] reasonably expected to produce the information requested." *Oglesby*, 920 F. 2d at 68. In the instant matter the plaintiff submitted a FOIA request, inter alia, for all records related to a November 9, 2004 search by CBP, whether he was on a "watch list" or otherwise deserved special attention from CBP, whether CBP was notified by any other agency that Plaintiff was on a "watch list" or otherwise a person of interest, whether Plaintiff's records with CBP contains any indication he should be searched "or treated or inspected differently from any other U.S. Citizen", and all documentation or communication between CBP and any other U.S. government entity related to the other parts of the FOIA request. Pullo Dec. at ¶ 12.

CBP conducted a search for responsive records in the relevant enforcement system, the Treasury Enforcement Communications System (TECS). TECS is the sole interface to CBP records concerning the interactions of CBP Officers with persons encountered at the border entering the United States, and therefore a search of this system would be reasonably calculated to reveal the responsive CBP records about the Plaintiff. Pullo Dec. at ¶13. TECS contains communications between agencies, any special instructions about individuals, including any reasons why that person should be detained or otherwise examined, any notations why a person

may be a "person of interest" or deserving of special attention, the reasons why an individual was detained, and any notes resulting from the detention of an individual. TECS is the only CBP database that would reasonably contain the information requested in this FOIA request. Pullo Dec. at ¶13.

The FOIA processor searched TECS, using Plaintiff's full name, date of birth and passport number, to find each document that would be responsive to Plaintiff's request. Pullo Dec. at ¶13. Twenty-four (24) documents were identified as responsive to the request. Each of the documents is a TECS computer screen printout. *Id.* Each of the twenty-four responsive documents was reviewed to determine if the document could be disclosed in its entirety, with redaction, or not at all. *Id.*

Thus, defendant conducted a reasonable search for responsive documents.

**CBP Properly Applied FOIA Exemptions.**

    1.    **Exemption (b)(2)**

Pursuant to 5 U.S.C. § 552(b)(2) ("Exemption 2"), the government is not required to disclose records "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). Exemption 2 applies primarily to two types of materials: (1) internal agency matters so routine or trivial that they could not be "subject to ... a genuine and significant public interest" and (2) internal agency matters of some public interest "where disclosure may risk circumvention" of statutes or agency regulations. *Dep't of Air Force v. Rose*, 425 U.S. 352, 369-70 (1976); *Schiller v. National Labor Relations Board*, 964 F.2d 1205, 1207 (D.C. Cir. 1992); *National Treasury Employees Union v. U.S. Customs Service*, 802 F.2d 525, 528-30 (D.C. Cir. 1986); *Crooker v. Bureau of Alcohol, Tobacco and Firearms*, 670 F.2d 1051, 1073-74 (D.C.

Cir. 1981); *Dorsett v. U.S. Dep't of Treasury*, 307 F. Supp.2d 28, 35-36 (D.D.C. 2004); <u>Edmonds v. F.B.I.</u>, 272 F. Supp.2d 35, 50 (D.D.C. 2003).

Depending upon the nature of the information, documents will fall within either the "low (b)(2) category" or the "high (b)(2) category." *Schiller*, 964 F.2d at 1207. "Low (b)(2)" information refers to internal procedures and practices of an agency, where disclosure would constitute an administrative burden unjustified by any genuine and significant public benefit. *Martin v. Lauer*, 686 F.2d 24, 34 (D.C. Cir. 1982); *see also Schiller*, 964 F.2d at 1207. "Low (b)(2)" information can be protected if the information qualifies as a personnel rule or internal practice of an agency or is sufficiently related to such a rule or practice. *See Schwaner v. Dep't of the Air Force*, 898 F.2d 793, 795 (D.C. Cir. 1990); *Voinche v. Federal Bureau of Investigation*, 46 F. Supp.2d 26, 30 (D.D.C. 1999).

Thus, trivial administrative data, such as file numbers, mail routing stamps, initials, data processing notations, brief references to previous communications, and other like administrative markings are exempt from disclosure. *See Coleman v. F.B.I.*, 13 F. Supp.2d 75, 78-79 (D.D.C. 1998) (*citing Lesar v. Dep't of Justice*, 636 F.2d 472 (D.C. Cir. 1980)); *see also Schiller*, 964 F.2d at 1208 (protecting from disclosure internal agency time deadlines and procedures, record keeping directions, instructions on which agency official to contact for assistance, and guidelines on clearance procedures); *Nix v. United States*, 572 F.2d 998, 1005 (4th Cir. 1978) (protecting cover letters of merely internal significance); *Scherer v. Kelley*, 584 F.2d 170, 175-78 (7th Cir. 1978) (protecting "file numbers, initials, signature and mail routing stamps, references to interagency transfers, and data processing references"); *Voinche*, 46 F. Supp.2d at 30 (protecting the file number for an informant and telephone extension of the Public Corruption Unit of the

7

FBI's Criminal Investigation Unit); *Wilson v. Dep't of Justice*, No. 87-2415-LFO, 1991 WL 111457, at *2 (D.D.C. June 13, 1991) (protecting transmittal slips from low level officials). The notion behind this reasoning is that administrative agencies should not be burdened by responding to requests for trivial information unlikely to be the subject of public interest. *See Martin*, 686 F.2d at 34.

  CBP also applied Exemption 2 to information properly designated as "high 2." An agency may withhold information as "high 2" if it demonstrates that "(1) the withheld information is 'predominantly internal' and (2) disclosure of the information would 'significantly risk[] circumvention of agency regulations or statutes.'" *Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 337 F. Supp.2d 146, 165 (D.D.C. 2004) (quoting *Crooker*, 671 F.2d at 1073-74). "In light of Exemption 2's anti-circumvention purpose, public interest in the disclosure is legally irrelevant." *Judicial Watch*, 337 F. Supp.2d at 165. Exemption 2's application extends not only to records containing information on criminal enforcement but also records containing information on civil enforcement and regulatory matters. *See, e.g., Crooker*, 670 F.2d at 1073 (protecting redacted portions of ATF manual containing information on investigative techniques to be used by agency personnel); *Dirksen v. U.S. Dep't of Health and Human Services*, 803 F.2d 1456, 1458-59 (9th Cir. 1986) (protecting internal audit guidelines to prevent risk of circumvention of agency Medicare reimbursement regulations); *Judicial Watch*, 337 F. Supp.2d at 165 (protecting Customs' withholding of "cases, file numbers and other administrative markings that indicated certain aspects of enforcement cases because knowledge of this information [could] render the Customs Service's electronic records system vulnerable to hacking, and facilitate circumvention of the laws and regulations enforced by the Customs

Service.").

The information withheld pursuant to Exemption (b)(2) consists of administrative markings (e.g., file or tracking numbers) relating to internal agency file control systems, internal agency administrative processes, status queries, the identity of particular types of computer system reports, and to the key stroke and function codes of internal agency computerized property management systems. These markings are purely internal and are utilized by CBP to assist in the management and control of its mission. As access to the file and computer systems is restricted from the public, the public has little or no interest in this information or the file markings and computer codes. In addition, knowledge of internal agency computer system report types and associated computer function codes could facilitate improper access to sensitive CBP records which could facilitate circumvention of the laws and regulations enforced by the Customs Service. Pullo Dec. at ¶ 18. The information withheld, in addition to the internal computer information mentioned above, also consists of such things as the administrative procedures in regard to the operational responsibilities discussed and assigned to CBP personnel, how information was handled in an operational context by CBP enforcement officers. Disclosure of this information to the public would reveal procedures, guidelines and techniques utilized by the agency in an operational environment, thereby benefitting those attempting to violate the law and avoid detection. Public awareness of specific operational information would aid those who seek to circumvent CBP operations and thus harm the agency's effective conduct of its mission. Pullo Dec. at ¶ 18.

### Exemptions (b) (6) and (7)(C)

Exemption 7 of the FOIA protects from disclosure "records or information compiled for

law enforcement purposes" under certain circumstances. 5 U.S.C. § 552(b)(7). "[T]he term 'law enforcement purpose' is not limited to criminal investigations but can also include civil investigations and proceedings in its scope." *Mittleman v. Office of Personnel Management*, 76 F.3d 1240, 1243 (D.C. Cir. 1996), *cert. denied*, 519 U.S. 1123 (1997) (*citing Pratt v. Webster*, 673 F.2d 408, 420 n.32 (D.C. Cir. 1982)). When, however, a criminal law enforcement agency invokes Exemption 7, it "warrants greater deference than do like claims by other agencies." *Keys v. U.S. Dept. of Justice*, 830 F.2d 337, 340 (D.C. Cir. 1987) (*citing Pratt v. Webster*, 673 F.2d 408, 418 (D.C. Cir. 1982)). A criminal law enforcement agency must simply show that "the nexus between the agency's activity . . . and its law enforcement duties" is "'based on information sufficient to support at least "a colorable claim" of its rationality.'" *Keys,* 830 F.2d at 340 (quoting Pratt, 673 F.2d at 421).

CBP is a law enforcement agency with enforcement responsibilities for over 400 federal statutes. Pullo Dec. at ¶ 22. CBP's law enforcement mandate includes enforcing laws regarding the proper entry of merchandise being imported into the United States and its movement through the United States for exportation. CBP also is responsible for determining the admissibility of all persons coming to the United States border. *Id*. CBP officers have the authority to search individuals entering the country for contraband, and to make arrests. CBP also works in conjunction with and assists other law enforcement agencies in criminal investigations. *Id*.

TECS is a system of records compiled for law enforcement purposes. *Id.* It contains communications between agencies, any special instructions about individuals, including any reasons why that person should be detained, such as outstanding warrants, or otherwise

examined, any notations about why a person may be a "person of interest" or deserving of special attention, the reasons why an individual was detained, and any notes resulting from the detention or search of an individual. *Id*.

Exemption 7(C) of the FOIA exempts from mandatory disclosure information compiled for law enforcement purposes when disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). "[T]he term 'law enforcement purpose' is not limited to criminal investigations but can also include civil investigations and proceedings in its scope." *Mittleman v. Office of Personnel Management*, 76 F.3d 1240, 1243 (D.C. Cir. 1996), cert. denied, 519 U.S. 1123 (1997) (citing *Pratt*, 673 F.2d at 420 n.32). When, however, a criminal law enforcement agency invokes Exemption 7, it "warrants greater deference than do like claims by other agencies." *Keys v. U.S. Dep't of Justice*, 830 F.2d 337, 340 (D.C. Cir. 1987) (*citing Pratt, 673 F.2d at 418*). A criminal law enforcement agency must simply show that "the nexus between the agency's activity . . . and its law enforcement duties" is "'based on information sufficient to support at least "a colorable claim" of its rationality.'" *Key*s, 830 F.2d at 340, (quoting Pratt, 673 F.2d at 421).

Once the agency has demonstrated that the records were compiled for law enforcement purposes, the Court must next consider whether the release of information withheld "could reasonably be expected to constitute an unwarranted invasion of personal privacy." This determination necessitates a balancing of the individual's right to privacy against the public's right of access to information in government files. *See, e.g., Reporters Comm*., 489 U.S. at 776-780.

The Supreme Court has made clear that "whether disclosure of a private document

11

under Exemption 7(C) is warranted must turn on the nature of the requested document and its relationship to 'the basic purpose of the Freedom of Information Act to open agency action to the light of public scrutiny,' *Dep't of Air Force v. Rose*, 425 U.S. at 372, rather than on the particular purpose for which the document is being requested." *Reporter's Comm.*, 489 U.S. at 772 (internal quotation marks omitted). Information that does not directly reveal the operations or activities of the government "falls outside the ambit of the public interest that the FOIA was enacted to serve." *Id.* at 775. The plaintiff bears the burden of establishing that the "public interest in disclosure is both significant and compelling in order to overcome legitimate privacy interests." *Perrone v. FBI*, 908 F.Supp. 24, 27 (D.D.C. 1995) *(citing Senate of Puerto Rico v. U.S. Dep't of Justice*, 823 F.2d 574, 588 (D.C. Cir. 1987)). Significantly, it is the "interest of the general public, and not that of the private litigant" that matters. *Brown v. FBI*, 658 F.2d 71, 75 (2d Cir.1981). "[T]he only public interest relevant for purposes of Exemption 7(C) is one that focuses on 'the citizens' right to be informed about what their government is up to.'" *Davis v. Dep't of Justice,* 968 F.2d 1276, 1282 (D.C. Cir. 1992) (quoting *Reporters Comm.*, 489 U.S. at 773) (internal quotation marks omitted).

       The privacy interests of third parties mentioned in law enforcement files are "substantial," while "[t]he public interest in disclosure [of third-party identities] is not just less substantial, it is insubstantial." *SafeCard Services, Inc. v. SEC*, 926 F.2d 1197, 1205 (D.C.Cir. 1991). Our Court of Appeals has held "categorically" that "unless access to names and addresses of private individuals appearing in files within the ambit of Exemption 7(C) is necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity, such information is exempt from disclosure." *SafeCard Services*, 926 F.2d at 1206.

12

In this case, this exemption has been applied to the names of government personnel who are involved in the inspection of the Plaintiff or who were otherwise mentioned in the documents. Pullo Dec. at ¶25.

In asserting this exemption, each piece of information was scrutinized to determine the nature and strength of any individual's privacy interest. Pullo Dec. at ¶24. In withholding the information, the individual's privacy interest is balanced against the public's interest in disclosure. In each instance, it was determined that there is no public interest in knowing the names of the individuals identified in the relevant records. *Id.* The identification of an individual in association with the performance of their duties in an operational context risks the unwarranted attribution and attention to the employee beyond the confines of their job and into their personal life. *Id.* These individuals also have privacy interests in not being harassed and annoyed because of their employment. *Id.* In addition, disclosing the withheld information would not shed light on how CBP performs its statutory duties. The identification of the names of government employees tells the public nothing about the manner in which the agency carries out its official responsibilities. *Id.* Therefore, the privacy interests of said individuals outweigh any arguable public interest. *Id.*.

The names of law enforcement officers traditionally have been protected against release by Exemption 7(C). *Davis,* 968 F.2d at 1281; *Lesar v. U.S. Dep't of Justice*, 636 F.2d 472, 487-488 (D.C. Cir. 1980). If the information were released, law enforcement personnel could be subjected to harassment or other harm. By contrast, the public interest in disclosure of names of CBP employees is slight. *Id.* The names will not "shed[] light on [the] agency's performance of its statutory duties." *Reporters Comm*., 489 U.S. at 772, as contemplated by the FOIA. In fact,

13

the public has an interest in non-disclosure of this information as disclosure may diminish the ability of law enforcement personnel to perform their duties. *Id.*

For the same reasons, exemption 6 also may properly be applied to the same information. Exemption 6 permits the government to withhold all information about individuals in "personnel and medical files and similar files" when the disclosure of such information "would constitute an unwarranted invasion of personal privacy." *See* 5 U.S.C. § 552(b)(6). The threshold issue to be determined in the application of Exemption 6 was firmly established in *U.S. Dep't of State v. Washington Post Co.*, 456 U.S. 595 (1982). The Supreme Court made clear that all information that "applies to a particular individual" meets the threshold requirement for protection under Exemption 6. *Id.* at 602. "The next step under Exemption 6 involves identifying the relevant privacy interests in non-disclosure and the public interests in disclosure, and determining `whether, on balance, disclosure would work a clearly unwarranted invasion of personal privacy.'" *Reed v. National Labor Relations Board, et al.*, 927 F.2d 1249, 1251 (D.C. Cir. 1991) (*quoting National Ass'n of Retired Federal Employees v. Homer*, 879 F.2d 873, 875 (D.C. Cir. 1989), *cert. denied*, 494 U.S. 1078 (1990)). "`The phrase `clearly unwarranted invasion of personal privacy' enunciates a policy that will involve a balancing of interests between the protection of an individual's private affairs from unnecessary public scrutiny, and the preservation of the public's right to governmental information.'" *Dep't of the Air Force v. Rose*, 425 U.S. 352, 372 (1976).

**CBP Disclosed All Reasonably Segregable Portions of Records.**

The District of Columbia Circuit has held that a District Court considering a FOIA action has "an affirmative duty to consider the segregability issue sua sponte." *Trans-Pacific Policing*

*Agreement v. U.S. Customs Service*, 177 F.3d 1022, 1028 (D.C. Cir. 1999). The FOIA requires that if a record contains information that is exempt from disclosure, any "reasonably segregable" information must be disclosed after deletion of the exempt information unless the non-exempt portions are "inextricably intertwined with exempt portions." 5 U.S.C. § 552(b); *Mead Data Cent., Inc. v. U.S. Dept. of the Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977).

In this case, CBP has demonstrated with reasonable specificity that all reasonably segregable information has been released. All of Defendant's responsive documents were redacted and released to Plaintiff with the exception of the information described above.

## CONCLUSION

For the reasons stated herein, Plaintiff cannot establish any violation of the Freedom of Information Act and summary judgment should be entered for defendant.

Respectfully submitted,

_____
JEFFREY A. TAYLOR, D.C. Bar #498610
United States Attorney

_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

_____
RHONDA C. FIELDS
Assistant United States Attorney
Civil Division
555 Fourth Street, N.W.
Washington, D.C. 20530
202/514/6970