UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| SINA MOAYEDI,<br><br>                Plaintiff,<br><br>     v.<br><br>U.S. CUSTOMS AND<br>BORDER PROTECTION,<br><br>                Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>) Civil Action No. 06-1082 (RBW)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**DECLARATION OF DOROTHY PULLO**

I, Dorothy Pullo, pursuant to 28 U.S.C. § 1746, declare as follows:

1. I am the Supervisory Program Analyst, TECS/FOIA Customer Satisfaction Unit, Office of Field Operations, United States Customs and Border Protection (CBP). As such, I am the official responsible for the overall supervision and management of the processing of Freedom of Information Act (FOIA) requests for information in CBP record systems, including CBP's database of information on the inspection of individuals at the border recorded in the Treasury Enforcement Communications System (TECS). I have held this position since April 2005.

2. I am familiar with the procedures followed by CBP in responding to requests for information from its files pursuant to the provisions of 5 U.S.C. § 552, the Freedom of Information Act, and 5 U.S.C. § 552a, the Privacy Act. Specifically, I am familiar with the procedures followed in responding to plaintiff's request for information pursuant to FOIA. The statements contained in this declaration are made on the basis of my review of the official files and records of this office, my personal knowledge of the internal operations of this office and

agency, and information acquired by me in the course of the performance of my official duties.

3. The statements I make in this affidavit are based on my personal knowledge, including knowledge acquired through, and agency files reviewed in, the course of my official duties.

4. The purpose of this declaration is to advise the Court as to how Plaintiff's FOIA request to CBP was handled, and to provide in accordance with *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1974) an explanation of the exemptions applied. This declaration provides the Court with an identification of each document or portion thereof withheld which is still in dispute, the statutory exemption(s) claimed, and provides the justification for the assertion of the FOIA exemptions used to withhold certain information contained in the records. For purposes of clarity, a Bates stamped copy of the documents, as redacted and released to Plaintiff, is included in Exhibit A.

5. This declaration consists of: (I) a listing of the relevant correspondence regarding Plaintiff's request; (II) an explanation of the search for records and the identification of records responsive to plaintiff's request; (III) an explanation of the notation form utilized to identify the justification of redacted material; (IV) the justification for the withheld materials under FOIA; and (V) a statement of segregability.

I. **Correspondence Concerning Plaintiff's FOIA Request**

6. The correspondence and communications pertaining to Plaintiff's request are attached hereto as Exhibits B through F.

7. On November 20, 2004, Plaintiff, via his counsel, filed an initial FOIA request. Exhibit B.

8. On January 3, 2005, the agency acknowledged receipt of this initial FOIA request.

Exhibit C. In this letter, the local FOIA office stated that there was a backlog of FOIA cases. The FOIA office also requested that the claimant provide a complete and signed Request for Records authorizing Mr. Moayedi's counsel to receive the requested records. Exhibit C.

9. On January 7, 2005, counsel for Mr. Moayedi faxed the agency the requested release and authorization. Exhibit D.

10. On February 4, 2005, Plaintiff mailed a letter to the FOIA office requesting a status update on the FOIA request. Exhibit E.

11. On August 1, 2006, the FOIA office responded to Plaintiff's FOIA request by releasing twenty-four (24) pages of documents, each with redactions pursuant to FOIA. The redactions were made pursuant to Exemptions (b)(2) and (b)(7)(C). Exhibit F.

II. **Search For And Identification Of Records Responsive To Plaintiff's FOIA Request**

12. Plaintiff submitted a FOIA request for all records related to a November 9, 2004 search by CBP, whether he was on a "watch list" or otherwise deserved special attention from CBP, whether CBP was notified by any other agency that Plaintiff was on a "watch list" or otherwise a person of interest, whether Plaintiff's records with CBP contains any indication he should be searched "or treated or inspected differently from an other U.S. Citizen", and all documentation or communication between CBP and any other U.S. government entity related to the other parts of the FOIA request.

13. When the FOIA complaint was received by my office in Washington, D.C., a member of my staff conducted, and I reviewed, a search for responsive records in the relevant enforcement system, TECS. TECS is the sole interface to CBP records concerning the interactions of CBP Officers with persons encountered entering the United States, and therefore a

search of this system would be reasonably calculated to reveal the responsive records about the Plaintiff. TECS contains communications between agencies, any special instructions about individuals, including any reasons why that person should be detained or otherwise examined, any notations why a persons may be a "person of interest" or deserving of special attention, the reasons why an individual was detained, and any notes resulting from the detention of an individual. TECS is the only CBP database that would reasonably contain the information requested in this FOIA request. The FOIA processor searched TECS using Plaintiff's full name, date of birth and passport number, to find each document that would be responsive to Plaintiff's request. Twenty-four (24) documents were identified as responsive to the request. Each of the documents is a TECS computer screen printout. Each of the twenty-four responsive documents was reviewed to determine if the document could be disclosed in its entirety, with redaction, or not at all.

14. After reviewing each of the responsive documents document, the CBP FOIA processor released the twenty-four documents to Plaintiff using Exemptions (b)(2) and (b)(7)(C), as applicable.

15. If a portion of a document was exempt, the appropriate exemption was marked on the face of the document. If a document could be released with redaction, each line of the document was reviewed to redact exempt information, with the basis for exemption noted on the document next to the redacted material. See Exhibit A.

XIV. **Explanation Of Notations Used For Justification Of Redacted Material**

16. The copies of the disputed documents contain, on their face, coded categories of exemptions that detail the nature of the information withheld pursuant to the provisions of FOIA. For example, if "(b)(7)(C)" appears on a document, this refers to Exemption (b)(7)(C) (i.e., 5

U.S.C. 552(b)(7)(C)) of FOIA concerning records or information compiled for law enforcement purposes that could reasonably be expected to constitute an "unwarranted invasion of personal privacy."

IV.   **Justification For Redacted Materials**

   **a.**   **5 U.S.C. 552(b)(2): Records Related Solely To The Internal Personnel Rules And Practices Of An Agency**

   17.   Section § 552(b)(2) of Title 5 of the U.S. Code exempts from mandatory disclosure matters that are "…related solely to the internal personnel rules and practices of an agency." The courts have construed Exemption (b)(2) to encompass two distinct categories of information: (a) internal matters of a relatively trivial nature, sometimes referred to as "low 2" information, and (b) more substantial internal matters the disclosure of which would risk circumvention of a legal requirement, sometimes referred to as "high 2" information. With respect to "high 2" information, the intent of exemption (b)(2) is that disclosure should not benefit those attempting to violate the law and avoid detection. The use of Exemption (b)(2) in this case involves both "low 2" and "high 2" information.

   18.   The "low 2" information withheld pursuant to Exemption (b)(2) consists of administrative markings (e.g., file or tracking numbers) relating to internal agency file control systems, internal agency administrative processes' should this apostrophe be a comma? status queries, the identity of particular types of computer system reports, and to the key stroke and function codes of internal agency computerized property management systems. These markings are purely internal and are utilized by CBP to assist in the management and control of its mission. As access to the file and computer systems is restricted from the public, the public has little or no interest in this information or the file markings and computer codes. In addition,

knowledge of internal agency computer system report types and associated computer function codes could facilitate improper access to sensitive CBP records which could result in the circumvention of the importation and entry laws and regulations enforced by CBP.

19. The "high 2" information withheld pursuant to Exemption (b)(2) is predominantly internal and does not impact, in any substantive manner, upon plaintiff. This "high 2" information, in addition to the internal computer information mentioned above, consists of such things as the administrative procedures in regard to the operational responsibilities discussed and assigned to CBP personnel, how information was handled in an operational context by CBP enforcement officers. Disclosure of this information to the public would reveal procedures, guidelines and techniques utilized by the agency in an operational environment, thereby benefitting those attempting to violate the law and avoid detection. Public awareness of specific operational information would aid those who seek to circumvent CBP operations and thus harm the agency's effective conduct of its mission.

20. In Exhibit A, Exemption (b)(2) was applied to pertinent redacted parts of each of the documents for the reasons stated above.

    b.    **5 U.S.C. 552(b)(7)(C): Records Or Information Compiled For Law Enforcement Purposes**

21. As is relevant to the information still at issue, 5 U.S.C. § 552(b)(7) provides that FOIA doe s not apply to "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy....."

22. CBP is a law enforcement agency with enforcement responsibilities for over 400

federal statutes. CBP's law enforcement mandate includes enforcing laws regarding the proper entry of merchandise being imported into the United States and its movement through the United States for exportation. CBP is also responsible for determining the admissibility of all persons coming to the United States border. CBP officers have the authority search individuals entering the country for contraband, and to make arrests. CBP also works in conjunction with and assists other law enforcement agencies in criminal investigations. TECS is a system of records compiled for law enforcement purposes. It contains communications between agencies, any special instructions about individuals, including any reasons why that person should be detained, such as outstanding warrants, or otherwise examined, any notations why a persons may be a "person of interest" or deserving of special attention, the reasons why an individual was detained, and any notes resulting from the detention or search of an individual.

23.    Section 552(b)(7)(C) protects, among other information, the identity of law enforcement personnel referenced in files compiled for law enforcement purposes. The exemption is intended to protect law enforcement personnel from harassment and annoyance in their private lives due to the conduct of their official duties, which could result from public disclosure of their identity.

24. In asserting this exemption, each piece of information was scrutinized to determine the nature and strength of any individual's privacy interest. In withholding the information, the individual's privacy interest is balanced against the public's interest in disclosure. In each instance, it was determined that there is no public interest in knowing the names of the individuals identified in the relevant records. The identification of an individual in association with the performance of their duties in an operational context risks the unwarranted attribution and attention to the employee beyond the confines of their job and into their personal

life. These individuals also have privacy interests in not being harassed and annoyed because of their employment. In addition, disclosing the withheld information would not shed light on how CBP performs its statutory duties. The identification of the names of government employees tells the public nothing about the manner in which the agency carries out its official responsibilities. Therefore, the privacy interests of said individuals outweighs any arguable public interest.

25. In this case, this exemption has been applied to the names of government personnel who are involved in the inspection of the Plaintiff or who were otherwise mentioned in the documents.

26. In Exhibit A, Exemption (b)(7)(C) was applied to pertinent parts of documents 1-9 (inclusive) for the reasons stated above.

V.    **Segregability**

27. All information withheld is exempt from disclosure pursuant to an applicable FOIA Exemption. All of Defendant's responsive documents were redacted and released to Plaintiff with the exception of the information described above.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct, and that Exhibits A through F attached hereto are true and correct copies.

Executed this 25th day of September, 2006.

Dorothy Pullo
Supervisory Program Analyst
Office of Field Operations
U.S. Customs & Border Protection
Washington, D.C.