UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
SINA MOAYEDI,                       )
                                    )
            Plaintiff,              )
                                    )
     v.                             )   Civil Action No. 06-1082 (RBW)
                                    )
U.S. CUSTOMS AND BORDER             )
PROTECTION,                         )
                                    )
            Defendant.              )
_____ )

## MEMORANDUM OPINION

This case arises from a Freedom of Information Act, 5 U.S.C. § 552 (2000) ("FOIA"), request by the plaintiff, Sina Moayedi, for the production of certain documents pertaining to his detentions and interrogations conducted by the United States Customs and Border Protection Service ("CBP") at various airports throughout the United States and in Nassau, Bahamas when he sought to re-enter the United States. Currently before this Court are the Defendant's Motion for Summary Judgment [D.E. # 6] ("Def.'s Mot.") and the plaintiff's Cross-Motion for Summary Judgment [D.E. # 7]. Based on the arguments and submissions presented by the parties, the defendant's motion will be granted and the plaintiff's motion will be denied.

I.      Factual Background

The plaintiff, an Irani-born naturalized United States citizen, is president of Montage Incorporated ("Montage"), a construction company. Complaint ("Compl.") ¶ 7. Since the company's creation in 1986, Montage has been retained by the United States government to perform work on numerous construction projects throughout the United States and overseas, including at, inter alia, naval air stations for the Department of Defense and embassies for the

1

Department of State.  Id. ¶ 8; Plaintiff's Memorandum of Points and Authorities in Opposition to Defendant's Motion for Summary Judgment and in Support of His Cross-Motion for Summary Judgment ("Pl.'s Mem."), Exhibit ("Ex.") A (Unsworn Declaration of Sina Moayedi) at 2. Accordingly, the plaintiff has received several high-level security clearances and frequently travels internationally.  Pl.'s Mem., Ex. A at 2.  On November 9, 2004, the plaintiff was detained, questioned and ultimately released by the CBP at the Miami International Airport upon re-entry into the United States from a business trip to Jamaica where he was visiting a construction project at the United States Embassy in Kingston.  Compl. ¶¶ 9-10.  Thereafter, the plaintiff has been stopped and interrogated at various airports by the CBP each time he was processed for re-entry into the United States upon returning from foreign countries.[1]  Id.  Seeking an explanation for his detentions and interrogations, the plaintiff, through his counsel, submitted a FOIA request to the CBP office in Washington, D.C. on November 20, 2004.  Id. ¶ 13; Memorandum in Support of Defendant's Motion for Summary Judgment ("Def.'s Mem."), Declaration of Dorothy Pullo ("Pullo Decl.") ¶ 7.  The plaintiff's FOIA request sought all "reports, findings or conclusions resulting from the . . . search of [the plaintiff] on November 9, 2004" and all "documents and communications" concerning "the reason(s) [the plaintiff] was selected for search" and "whether [the plaintiff] is on any 'watch list'" or otherwise deserves special attention from the CBP.  Compl. ¶ 13.

---

[1] According to the plaintiff, he was also detained at airports during the process for re-entry into the United States by the CBP on December 11, 2004 (Miami); January 29, 2005 (Fort Lauderdale); February 5, 2005 (Washington Dulles); February 19, 2005 (Miami); April 3, 2005 (Fort Lauderdale); April 7, 2005 (Fort Lauderdale); April 16, 2005 (Washington Dulles); May 1, 2005 (Charlotte); May 7, 2005 (Miami); May 12, 2005 (Nassau); May 26, 2005 (Washington Dulles); July 27, 2005 (Washington Dulles); August 2, 2005 (Fort Lauderdale); August 14, 2005 (Washington Dulles); October 24, 2005 (Washington Dulles); December 17, 2005 (Atlanta); April 6, 2006 (Fort Lauderdale); May 7, 2006 (Miami); and May 25, 2006 (Fort Lauderdale). Pl.'s Mem., Ex. A at 2-3.

On January 3, 2005, the CBP acknowledged receipt of the plaintiff's initial FOIA request and stated that the CBP was experiencing a backlog of FOIA cases. Def.'s Mem., Pullo Decl. ¶ 8. Additionally, the CBP requested that the plaintiff provide a complete and signed Request for Records authorizing the plaintiff's counsel to receive the requested records. Compl. ¶ 14; Def.'s Mem., Pullo Decl. ¶ 8. On or about January 6, 2005, plaintiff's counsel faxed the CBP the requested release and authorization form. Compl. ¶ 15; Def.'s Mem., Pullo Decl. ¶ 9. Approximately one month later, on February 4, 2005, plaintiff's counsel sent a letter to the FOIA office requesting a status update on the plaintiff's FOIA request. Compl. ¶ 17; Def.'s Mem., Pullo Decl. ¶ 9. Having received no response in over a year, the plaintiff filed his complaint with this Court on June 13, 2006, seeking a judgment declaring that the CBP had violated the FOIA and requesting an order compelling production of the requested documents, along with attorneys' fees and other court related costs. Compl. ¶¶ 18, 26. Finally on August 1, 2006, the FOIA office responded to the plaintiff's request, releasing 24 pages of documents, each with redactions. Def.'s Mem., Pullo Decl. ¶ 11; Def.'s Mot., Ex. A (copies of the released documents). The documents produced were the result of a search of the Treasury Enforcement Communications System ("TECS"). Id. ¶ 13. The TECS is a database that contains records concerning encounters between CBP officers and persons entering the United States. Id. The 24 responsive documents were printouts of the TECS computer screen and each page contained information that was redacted pursuant to 5 U.S.C. § 552(b)(2) ("Exemption 2") and 5 U.S.C. § 552(b)(7)(C) ("Exemption 7") of the FOIA. Id. ¶ 14.[2] The CBP filed an answer to the plaintiff's complaint

---

[2] Nine of the 24 documents were redacted pursuant to Exemption 7 and all 24 records were redacted pursuant to Exemption 2 of the FOIA. See generally Def.'s Mot., Ex. A.

3

on August 9, 2006, and subsequently filed its Motion for Summary Judgment that is the subject of this Opinion.

In its Motion for Summary Judgment, the CBP contends that the plaintiff's complaint should be dismissed because it has complied with all FOIA requirements and thus is entitled to summary judgment. Def.'s Mot. at 2. In support of its position, the CBP asserts that: (1) its search was adequate to discover all responsive documents; and (2) it properly withheld parts of the responsive documents pursuant to Exemption 2 and Exemption 7 of the FOIA. Def.'s Mem. at 3. The plaintiff opposes the motion and has filed a cross-motion for summary judgment wherein he contends that the defendant's search for responsive documents was inadequate and that the documents that were discovered have been improperly redacted under Exemption 2. Pl.'s Mem. at 8-9. For the reasons that follow, the Court concludes that the defendant's search was adequate and that the documents that were discovered were properly redacted. The Court must therefore grant the defendant's Motion for Summary Judgment and deny the plaintiff's cross-motion for summary judgment.

II.     Standard of Review

The court may grant summary judgment when there is no genuine issue of material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In resolving a motion for summary judgment, all reasonable inferences that may be gleaned from the facts before the court must be construed in favor of the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). To satisfy this standard in a FOIA case, an agency must show, viewing the facts in the light most favorable to the requester, that there is no genuine issue of material fact with regard to

the agency's compliance with the FOIA.  <u>Steinberg v. U.S. Dep't of Justice</u>, 23 F.3d 548, 551 (D.C. Cir. 1994) (citation omitted).  In order to satisfy this standard, "the defending agency must prove that each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the (FOIA's) inspection requirements." <u>Perry v. Block</u>, 684 F.2d 121, 126 (D.C. Cir. 1982) (citation omitted).  When reviewing an agency's response to a plaintiff's FOIA request, "the court . . . may examine the contents of such agency records in camera to determine whether such records or any part thereof shall be withheld under any of the exemptions set forth [under the FOIA], and the burden is on the agency to sustain its action."  5 U.S.C. 552(a)(4)(B); <u>see</u> <u>also</u> <u>Founding Church of Scientology of Washington, D.C., Inc. v. Nat'l Sec. Agency</u>, 610 F.2d 824, 830 (D.C. Cir. 1979).

> Therefore, in deciding whether summary judgment is proper, the Court must first answer whether the agency "made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." <u>Campbell v. U.S. Dep't of Justice</u>, 164 F.3d 20, 27 (D.C. Cir. 1998) (citing <u>Oglesby v. U.S. Dep't of the Army</u>, 920 F.2d 57, 68 (D.C. Cir. 1990).  Second, the Court must determine whether any responsive information that the agency has withheld falls within one of the FOIA's exemptions. <u>Wilson v. Drug Enforcement Admin.</u>, 414 F. Supp. 2d 5, 9 (D.D.C. 2006) (citing <u>Military Audit Project v. Casey</u>, 656 F.2d 724, 738 (D.C. Cir. 1981).  To demonstrate both the adequacy of the search and the application of any exemptions, the agency may submit non-conclusory affidavits or declarations that explain, in reasonable detail, the scope and method of the agency's search as well as any justifications for non-disclosure.  <u>Steinberg</u>, 23 F.3d at 551.  Such agency affidavits or declarations "are accorded a presumption of good faith, which cannot be rebutted by 'purely

speculative claims about the existence and discoverability of other documents.'" <u>SafeCard Services, Inc. v. SEC</u>, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (citing <u>Ground Saucer Watch, Inc. v. CIA</u>, 692 F.2d 770, 771 (D.C. Cir. 1981)).  Therefore, if the agency's search was adequate, and the asserted FOIA exemptions are justified, the Court may grant summary judgment in favor of the defending agency.

III.   <u>Analysis</u>

    A.   <u>Adequacy of the Search</u>

The CBP contends that its search for responsive documents was adequate, thus satisfying the requirements of the FOIA, because it engaged in a "good faith effort to conduct a search for the requested records, using methods which [were] reasonably expected to produce the information requested." Def.'s Mem. at 5 (citing <u>Oglesby</u>, 920 F.2d at 68).  On the other hand, the plaintiff contends that the CBP's search was inadequate because it "does not include records and files, other than those in TECS, held at the regional or district offices, where one would logically expect to find hard copies and related files responsive to the search terms." Pl.'s Mem. at 8.  Additionally, the plaintiff contends that the CBP's search was inadequate because its search failed to locate or disclose a single responsive document concerning why the plaintiff had been interrogated over 20 times during the re-entry process into the United States over the course of 19 months.  <u>Id.</u>  The CBP, however, responds that it was under no obligation to search the field offices since the plaintiff only directed its FOIA request to the CBP headquarters, Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment and Opposition to Plaintiff's Cross-Motion for Summary Judgment ("Def.'s Reply") at 1-2, and that a search of the TECS database alone would be reasonably calculated to produce the requested documents since

the TECS was the "sole interface to [the] CBP records concerning the interactions of [the] CBP Officers with persons entering the United States," Def.'s Mem., Pullo Decl. ¶ 13 (emphasis added).

As noted above, an agency fulfills its obligations under the FOIA if it can "demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" Valencia-Lucena v. U.S. Coast Guard, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting Truitt v. Dep't of State, 897 F.2d 540, 542 (D.C. Cir. 1990)). As the District of Columbia Circuit has made clear, "[t]he issue is not whether any further documents might conceivably exist but rather whether the government's search for responsive documents was adequate." Weisberg v. U.S. Dep't of Justice (Weisberg I) 705 F.2d 1344, 1351 (D.C. Cir. 1983) (quoting Perry, 684 F.2d at 128); see also Meeropol v. Meese, 790 F.2d 942, 956 (D.C. Cir. 1986) (finding that "a search need not be perfect, only adequate"). The adequacy of an agency's search under the FOIA is determined by a "standard of reasonableness," which is "dependant upon the circumstances of the case[.]" Weisberg I, 705 F.2d at 1351 (citations omitted). The agency bears the burden of showing that its search was adequate, which it may satisfy by submitting affidavits or declarations that explain in reasonable detail the scope and method of the search. Steinberg, 23 F.3d at 551. To challenge the adequacy of an agency's search, a plaintiff must present evidence rebutting the agency's initial showing of a good faith search. SafeCard Services, 926 F.2d at 1201. Mere speculation as to the existence of records not located in the search does not undermine the adequacy of a search. Id.

Although an agency "cannot limit its search to only one record system if there are others that are likely to turn up the information requested[,]" there is also "no requirement that an

agency search every record system." Oglesby, 920 F.2d at 68 (holding that the agency was required to explain in its affidavit that no other record system was likely to produce responsive documents in order to prove the reasonableness of its search) (emphasis added). Therefore, if searching only one database would be "reasonably calculated to uncover all relevant documents," then such search may be deemed adequate. Weisberg v. U.S. Dep't of Justice (Weisberg II), 745 F.2d 1476, 1485 (D.C. Cir. 1984); see also Ray v. F.B.I., 441 F. Supp. 2d 27, 32 (D.D.C. 2006) (holding that "the fact that the [agency's] search did not meet plaintiff's expectations does not lead inevitably to the conclusion that its search was inadequate"); NYC Apparel FZE v. U.S. Customs & Border Protection, 484 F. Supp. 2d 77, 88 (D.D.C. 2007) (RBW) (finding that the CBP was not required to search additional databases after it had searched the TECS and the plaintiff's individual case files because "the fact that there may possibly be additional documents . . . is not relevant to the question of whether [the] defendant conducted an adequate search for the documents") (citing Hornbostel v. U.S. Dep't of Interior, 305 F. Supp. 2d 21, 27 (D.D.C. 2003); but see James v. U.S. Customs & Border Protection, 474 F. Supp. 2d 154, 159 (D.D.C. 2007) (finding that the CBP's search of only one database, the TECS, was not adequate because "[the] vague, cursory description [provided by the CBP] alone [did] not provide sufficient detail for the Court to determine whether TECS was the only CBP filing system likely to contain relevant information").

Here, the defendant states that the TECS is the "only CBP database that would reasonably contain the information requested in this FOIA request," and it further contends that the TECS would contain "any reasons why that person should be detained or otherwise examined." Def.'s Mem., Pullo Decl. ¶ 13 (emphasis added). Additionally, the CBP meticulously explains how it

conducted the search. Id. Specifically, it represents that a FOIA processor would have commenced its search by entering the plaintiff's full name, date of birth, and passport number into the TECS database; then, when the responsive documents were identified, they would have been printed and reviewed to determine if each document could be disclosed in its entirety, with redactions, or had to be withheld entirely. Id. Therefore, the agency's declarations, see generally Def.'s Mem., Pullo Decl. and Errata to Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment and Opposition to Plaintiff's Cross-motion for Summary Judgment, Attach. 1 (Supplemental Decl. of Dorothy Pullo), which are accorded a presumption of good faith, SafeCard, 926 F.2d at 1200 (citing Ground Saucer Watch, Inc., 692 F.2d at 770-71), are sufficiently detailed to enable the Court to conclude that the agency's search was adequate. And, while the agency's untimeliness in responding to the plaintiff's request is remiss, the Circuit Court has found that an agency's dilatoriness, standing alone, in responding to a FOIA request is not evidence of bad faith. See Goland v. CIA, 607 F.2d 339, 355 (D.C. Cir. 1978) (finding that although the agency's responses were not always timely, "the [agency's] delay alone cannot be said to indicate an absence of good faith"); Open America v. Watergate Special Prosecution Force, 547 F.2d 605, 616 (D.C. Cir. 1976) (holding that processing FOIA requests in "a first-in, first-out basis" may constitute good faith efforts, even if not within the twenty-day statutory deadline); see also Wheeler v. U.S. Dep't of Justice, 462 F. Supp. 2d 48, 54 (D.D.C. 2006) (finding that the agency's one-year delay in responding to a FOIA request did not necessarily render the search unreasonable or inadequate). Furthermore, the plaintiff has not established, but merely speculates, that additional records exist. Although the "CBP's search did not locate, or disclose, a single record instructing [the] CBP to enter the notation 'TECS LOOKOUT' nor did

9

the search locate a single record discussing the reasons for placing a lookout on [the plaintiff,]" Pl.'s Mem. at 8, it is not necessary that the search be perfect, but only reasonable.

With respect to the CBP's failure to search its field offices, the Court finds that searching the TECS database alone is adequate for the following reasons. First, the FOIA requires that a request be "made in accordance with [the agency's] published [FOIA] rules stating the time, place, fees (if any), and procedures to be followed[.]" 5 U.S.C. § 552(a)(3)(A). Because most agencies have published regulations that FOIA requests seeking information from particular field offices must be made to the respective field offices, agencies are generally not required to search offices other than those to which the request has been directed. Kowalczyk v. U.S. Dep't of Justice, 73 F.3d 386, 390 (D.C. Cir. 1996) (finding that the agency "reasonably limited its search to files located at its headquarters, which is where [the plaintiff] sent his request"); Church of Scientology of Cal. v. IRS, 792 F.2d 146, 150 (D.C. Cir. 1986) (finding that the agency is not required to search additional offices because FOIA requesters must follow the "statutory command that requests be made in accordance with published rules"); Maydak v. U.S. Dep't of Justice, 254 F. Supp. 2d 23, 44-45 (D.D.C. 2003) (finding that the agency did not act in bad faith by failing to search its field offices because the plaintiff did not direct his FOIA requests to a particular field office, in accordance with the FBI's FOIA regulations). Here, the plaintiff's request was only addressed to the CBP's Washington, D.C. office. Compl., Ex. A (Letter from plaintiff's counsel to the Washington, D.C. FOIA Office dated Nov. 20, 2004). And, the CBP's published FOIA regulations clearly state that "a person shall request records or information maintained in a field office of the United States Customs Service by either mailing or personally delivering the request to the director . . . or special agent in charge, where the field office is

located." 19 C.F.R. § 103.5(d) (2006) (emphasis added). Hence, the CBP was under no obligation to search any of its several field offices. Id. Moreover, the TECS database produced records from each airport where the plaintiff was interrogated, so there is no reason to believe that the CBP might find responsive documents elsewhere. Accordingly, for the foregoing reasons, the Court finds that the CBP has demonstrated that it conducted an adequate search in response to the scope of the plaintiff's FOIA request.

  B. Exemption 2 of the FOIA

The FOIA provides that "all documents in the government's possession are available to the public, unless the disclosure of the requested documents is specifically exempted by the [FOIA]." Suzhou Yuanda Enter., Co., v. U.S. Customs & Border Protection, 404 F. Supp. 2d 9, 12 (D.D.C. 2005) (citing Vaughn v. Rosen, 484 F. 2d 820, 823 (D.C. Cir. 1973)). If an agency withholds documents pursuant to any of the nine FOIA exemptions, the agency "bears the burden of persuading the Court that the decision to withhold documents was proper." Id. (citing Hayden v. Nat'l Sec. Agency, 608 F.2d 1381, 1386 (D.C. Cir. 1979). Here, the only asserted exception being challenged by the plaintiff is the CBP's invocation of Exemption 2.[3] Def.'s Mem. at 6; Pl.'s Mem. at 9. For the following reasons, the Court finds that the CBP properly invoked Exemption 2 and that there is no genuine issue of material fact as to the propriety of its application.

Under Exemption 2 of the FOIA, the government is not required to disclose information "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2).

---

[3] The CBP also redacted information pursuant to Exemption 7, however, the plaintiff does not contest the redactions based on this exemption.

Thus, only information "used for predominantly internal purposes" is protected under Exemption 2. Crooker v. Bureau of Alcohol, Tobacco & Firearms, 670 F.2d 1051, 1073-1074 (D.C. Cir. 1981). Information is "predominantly internal" if it does "not purport to regulate activities among members of the public . . . [or] set standards to be followed by agency personnel in deciding whether to proceed against or to take action affecting members of the public." Id. at 1069. If the "predominantly internal" test is met, an agency may withhold material if it demonstrates that either: (1) the "material relates to trivial administrative matters of no genuine public interest" or (2) the "disclosure may risk circumvention of agency regulation." Schiller v. Nat'l Labor Relations Board, 964 F.2d 1205, 1207 (D.C. Cir. 1992) (citation omitted). Predominantly internal documents that fall into the first category are classified as "Low 2" materials, which include, for example, "trivial administrative data such as file numbers, mail routing stamps, initials, data processing notations, and other administrative markings[.]" Coleman v. F.B.I., 13 F. Supp. 2d 75, 78-79 (D.D.C. Cir. 1998) (citing Lesar v. U.S. Dep't of Justice, 636 F.2d 472 (D.C. Cir. 1980) (additional citation omitted). Documents in the second category are classified as "High 2" materials, which include more substantive internal matters, whose disclosure would "significantly risk circumvention of federal statutes or regulations." Crooker, 670 F.2d at 1053.

The withholdings at issue here concern both "High 2" and "Low 2" information.[4] Def.'s Mem., Pullo Decl. ¶¶ 17-20; Pl.'s Mem. at 9-12. Specifically, the plaintiff contests the redactions

---

[4] The plaintiff also claims that the CBP improperly withheld "two additional screens" which followed document number 0001, indicating that "subsequent screens are blank," to which the defendant responded by providing a supplemental declaration explaining that the two additional screens only "contained data fields for potential fields, and did not contain any information that corresponded to those data fields . . . and therefore . . . contain no responsive information that was responsive to Plaintiff's FOIA request." Errata to Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment and Opposition to Plaintiff's Cross-motion for Summary Judgment, Attach. 1. The Court agrees that disclosure of the two additional blank screens is unnecessary because they do not contain any information responsive to the plaintiff's request.

of the "reason" or "reason for referral" explanation contained on 22 of the 24 documents, which is the location on the documents where it is indicated why the plaintiff was detained and searched at some of the airports.[5] Pl.'s Mem. at 10-12. Additionally, the plaintiff seeks the information contained in the location on the documents for recording "comments" or "remarks" in regards to 11 of the 24 documents, which contain information concerning what the investigating officers wrote during or after the detentions and interrogations were completed.[6] Id. The defendant contends that this information was withheld under: (1) "Low 2" exemption, which permits the withholding of "administrative markings (e.g., file or tracking numbers) relating to internal agency file control systems, internal administrative processes . . . status queries, the identity of particular types of computer system reports, and to the key stroke and function codes of internal agency computerized property management systems," Def.'s Mem., Pullo Decl. ¶ 18; or (2) the "High 2" exemption, which permits the withholding of "such things as the administrative procedures in regard to the operational responsibilities discussed and assigned to CBP personnel, [and] how information was handled in an operational context by the CBP enforcement officers," Id. ¶ 19. The CBP further asserts that the "High 2" information withheld "does not impact, in any substantive manner, upon [the] plaintiff." Id.

---

[5] All of the documents except for the first, document number 0001, contain a "reason" or "reason for referral" field. See Def.'s Mot., Ex. A. Furthermore, of the 23 remaining "reason" or "reason for referral" fields on the documents, all have been redacted pursuant to Exemption 2, except for one "reason" field on document number 0007, which states "TECS Lookout." Def.'s Mot., Ex. A. Therefore, the plaintiff contests the redactions of the information contained in the "reason" fields on documents number 0002-0006 and 0008-0009, and of the "reason for referral" fields on documents number 00010-00024.

[6] All 24 documents contain a "comments" or "remarks" field. See Def.'s Mot., Ex. A. Of the 24 records with a "comments" or "remarks" field, 11 "comments" or "remarks" fields were redacted in whole or in part. The plaintiff contests the redactions of the "comments" field on documents 0004-0007 and the "remarks" field on documents number 00011-00013, 00017-00018, 00020, and 00024.

In response, the plaintiff maintains that the CBP misapplied the "Low 2" exemption to withhold information to which he is entitled because some of the information withheld is neither trivial nor is it "predominantly internal" since it does affect him in a substantive manner. Pl.'s Mem. at. 11. Furthermore, the plaintiff argues that the CBP misemployed the "High 2" exemption because its disclosure of the information contained in one of the "reason" fields is "inconsistent with [the CBP's] claim that information withheld under Exemption [2] may risk circumvention of CBP operations, or assist those attempting to violate the law and avoid detection." Id. at 12. Lastly, the plaintiff asserts that the CBP's "inconsistent redaction" of the information in the "reason" field of the documents demonstrates that its explanations for the redactions are "inaccurate and overly vague." Id. For example, he notes, the "reason" field of document 0007 is unredacted and states "TECS Lookout," whereas the remaining 23 "reason" or "reason for referral" fields are totally redacted. See Def.'s Mot., Ex. A.

Although one of the underlying reasons for the enactment of the FOIA was to introduce transparency to government activities, Congress also adopted nine exemptions to disclosure of responsive documents to protect "legitimate governmental and private interests [that] could be harmed by release of certain types of information." Critical Mass Energy Project v. Nuclear Regulatory Comm'n, 975 F.2d 871, 872 (D.C. Cir. 1992) (citation omitted). However, when an agency asserts a FOIA exemption, in this Circuit the agency must produce a Vaughn index, which describes the records, or portions thereof, that the agency has withheld and provides an explanation of the reasons for the agency's non-disclosure. Vaughn, 484 F.2d at 827. Here, the CBP has complied with Vaughn, having provided sufficiently detailed explanations and descriptions in the Pullo Declaration and the other supporting documents it submitted in support

of "why it has withheld information," in addition to having identified each exemption claimed on the documents themselves. Summers v. U.S. Dep't of Justice, 140 F.3d 1077, 1080 (D.C. Cir. 1998) (citation omitted). And, it is not necessary that an agency attach specific labels to designate whether a withholding falls under the "Low 2" or "High 2" category in order to comply with Vaughn. See NYC Apparel FZE, 484 F. Supp. 2d at 92 n.21 (finding that the "level of detail in the Vaughn indexes and supporting documents allow the Court to determine what is '[H]igh 2' and what is '[L]ow 2' in the absence of an express determination by Customs."). Therefore, the Court disagrees with the plaintiff's contentions that the CBP's explanations are "inaccurate and overly vague," Pl.'s Mem. at 12, and finds that the CBP's declaration and their other supporting documents satisfy what Vaughn requires.

As previously discussed, to be properly exempt under Exemption 2, the first inquiry the Court must make is whether the material withheld is "predominantly internal." Crooker, 670 F.2d at 1075. To qualify as "predominantly internal" under the standard articulated in Crooker, the material withheld in the "reasons" fields must consist "solely of instructions to agency personnel" and there is "no attempt to modify or regulate public behavior[,] only to observe it for illegal activity." Id. (emphasis added). Here, the information the CBP characterizes as Low 2 material consists of instructions to CBP personnel about observations of public behavior that may reflect illegal activity. Def.'s Mem. at 9 (citing Pullo Decl. ¶ 18); see also Def.'s Mem., Pullo Decl. ¶ 19. Although the Court appreciates that the plaintiff may be affected by procedures employed by the CBP in making these observations, the Court agrees with the findings of another member of this Court that:

> "[while the plaintiff] is correct that these matters have some tangential impact on
> members of the public, and that they may, accordingly, be of some public

> interest[,] any internal personnel rules and practices of an agency [have] some effect on the public-at-large. The information here is nevertheless predominantly internal, because it details (among other things) litigation strategies, tactics and <u>methods for Customs employees to follow with respect to their official law enforcement duties</u> . . . ."

<u>Peter S. Herrick's Customs & Int'l Trade Newsletter v. U.S. Customs & Border Protection</u>, No. 04-00377, 2006 WL 1826185 at * 5 n.3 (D.D.C. June 30, 2006) (internal citations and quotations omitted) (emphasis added). Thus, the Court finds that the redactions here clearly fall within this protected category of "predominantly internal" agency operational procedures, whether classified as either "Low 2" or "High 2" material.

The second inquiry for the Court to conduct is an assessment of whether the material withheld qualifies as either "trivial administrative matters of no genuine public interest" or material whose disclosure "may risk circumvention of agency regulation." <u>Schiller</u>, 964 F.2d at 1207 (quoting <u>Schwaner v. Dep't of Air Force</u>, 898 F.2d 793, 794 (D.C. Cir. 1990)). As to this assessment, the Court finds that the redaction made by the CBP on the basis that the information qualifies as "Low 2" material was proper, because Exemption 2 is "automatic" when the information involves purely internal markings of no genuine public interest. <u>Ray</u>, 441 F. Supp. 2d at 33 (citing <u>Founding Church of Scientology of Washington, D.C., Inc. v. Smith</u>, 721 F.2d 824, 830-31 n.4 (D.C. Cir. 1983).[7] And, the information redacted from the "reason" and "comments" fields qualifies as "High 2" material because disclosure of the CBP's procedures for detentions and interrogations conducted at airports "may benefit those attempting to violate the law and

---

[7] The information characterized as "Low 2" material consists of "administrative procedures in regard to the operational responsibilities discussed and assigned to CBP personnel, [and] how information was handled in an operational context by CBP enforcement officers." Def.'s Mem., Pullo Decl. ¶ 19.

16

avoid detection by Customs," Suzhou, 404 F. Supp. 2d at 12, and "individuals seeking to evade capture by customs officials . . . or to impede operations would be privy to the most effective ways in which to do so[,]" Herrick's, 2006 WL 1826185 at *5.[8]  As the defendant accurately notes, "[d]isclosure of this information to the public would reveal procedures, guidelines and techniques utilized by the agency in an operational environment, thereby benefitting those attempting to violate the law and avoid detection." Der.'s Mem. at 12.  Thus, "in light of Exemption 2's anti-circumvention purpose, public interest in the disclosure is legally irrelevant" so far as High 2 material is concerned. Judicial Watch Inc., v. U.S. Dep't of Commerce, 337 F. Supp. 2d 146, 165 (D.D.C. 2004) (citation omitted).  Moreover, it is also legally irrelevant whether or not the plaintiff himself intends to circumvent agency regulations or to make the information more readily available to others who intend to do so.  See  Herrick's, 2006 WL 1826185 at *5 n.4 (finding that the plaintiff's assurance that he does not intend to circumvent lawful agency regulation is irrelevant because the "Court must consider all 'possible uses [of the material] by any member of the public'") (citation omitted).  Similarly, an agency is under no obligation to explain its reasoning behind internal administrative procedures or investigative techniques "where secret law is not involved and where revelation of its contents would permit individuals who were the subjects of investigatory surveillance to evade detection of their criminal activities." Crooker, 670 F.2d at 1077 (Leventhal, J., concurring) (majority holding that the investigatory techniques were exempt from

---

[8]As previously noted, this information consists of instructions to CBP personnel about the observations of public behavior for the purpose of detecting illegal activity.  See Def.'s Mem. at 9 (citing Pullo Decl. ¶ 18).

disclosure); see also Flowers v. IRS, 307 F. Supp. 2d 60, 71 (D.D.C. 2004) (declaring that the plaintiff cannot use FOIA discovery to conduct an investigation into the agency's rationale for auditing her); Dorsett v. U.S. Dep't of Treasury, 307 F. Supp. 2d 28, 37 (D.D.C. 2004) (RBW) (holding that Exemption 2 applied to "investigative profile documents" containing "law enforcement investigative techniques").  In sum, this material was properly withheld in light of its relationship to airport and border security, which is of utmost importance in today's environment.  Therefore, the Court concludes that the material withheld regarding the possible reasons why individuals are detained and questioned is predominantly internal and because its disclosure may enable potential suspects to "change [their] pattern of [illegal activities] in order to avoid detection and apprehension[,]" Wilson, 414 F. Supp. 2d at 12, it properly qualifies as "High 2" material exempt from disclosure under the FOIA.

IV.    Conclusion

For the aforementioned reasons, the Court will grant summary judgment to the CBP as to the adequacy of its search and also its assertion of FOIA Exemption 2, and accordingly the plaintiff's summary judgment motion must be denied.[9]

---

[9]The defendant filed a Motion for In Camera Consideration of Defendant's Supplemental Memorandum In Support of Defendant's Motion For Summary Judgment and a Supplemental Memorandum in Support of Defendant's Motion for Summary Judgment.  The Court notes that it found it unnecessary to consider the defendant's Supplemental Memorandum in Support of Defendant's Motion for Summary Judgment in reaching its decision.  Therefore, the defendant's Motion for In Camera Consideration of Defendant's Supplemental Memorandum In Support of Defendant's Motion For Summary Judgment is denied as moot.

**SO ORDERED** on this 11th day of September, 2007.[10]

REGGIE B. WALTON
United States District Judge

---

[10] An Order consistent with this Memorandum Opinion is being issued contemporaneously herewith.